IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD A. OESCHLE and | : | |
| MARYANN T. OESCHLE, h/w | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 03-CV-6875 |
| PRO-TECH POWER, INC., | : | |
| P&F BROTHER INDUSTRIAL | : | |
| CORP. | : | |

**SURRICK, J.**                                                                                                   **MARCH 15, 2006**

## MEMORANDUM & ORDER

Presently before the Court are Defendant P&F Brother Industrial Corp.'s Motion To Dismiss Pursuant To Federal Rule of Civil Procedure 12(b)(2) (Doc. No. 13), Motion To Quash And For Entry Of A Protective Order (Doc. No 21), and Motion For Permission To File A Reply Brief In Support Of Motion To Dismiss (Doc. No. 22), and Plaintiffs Richard A. and MaryAnn T. Oeschle's Motion To Strike Defendant's Motion To Quash And For Entry Of A Protective Order (Doc. No. 24). For the following reasons Defendant's Motion for Permission to File a Reply Brief will be denied, Defendant's Motion to Quash and for Entry of a Protective Order will be granted in part and denied in part, Defendant's Motion to Dismiss will be denied without prejudice, and Plaintiff's Motion to Strike will be denied.

**I.   BACKGROUND**

On or about December 4, 2001, Plaintiff Richard T. Oeschle, a laborer employed at Willamette Industries, Inc. in Langhorne, Pennsylvania, operated a Pro-Tech Model 7208-Type II 10-inch compound miter saw. (Doc. No. 13 at Ex. 1 ¶¶ 8-9.) While using the saw, Richard Oeschle suffered serious injuries to his left hand, including the complete or partial amputation of three fingers. (*Id.* ¶ 10, 13.) Plaintiffs brought the instant action against Defendants, alleging

that Defendants designed, manufactured, marketed, and distributed the aforementioned miter saw.  (*Id.* ¶ 4.)  The claims in Plaintiffs' Complaint are based on negligence, breach of warranty, strict liability, and loss of consortium.  (*Id.*)

Defendant Pro-Tech Power, Inc. ("Pro-Tech") is a company with its principal place of business in Gardena, California.  (Doc. No. 13 at Ex. 1 ¶ 2; Doc. No. 2 ¶ 2.)  Defendant P&F Brother Industrial Corp. ("P&F") is a Taiwanese corporation with its principal place of business in Taichung, Taiwan.  (Doc. No. 13 at Ex. B ¶ 3.)  P&F admits to having designed and manufactured the subject miter saw in Taiwan.  The saw was then sold to Pro-Tech and subsequently delivered F.O.B. (freight-on-board) in Taiwan.  The risk of loss passed from P&F to Pro-Tech in Taiwan.  (*Id.* at Ex. B ¶ 10.)  Pro-Tech presently advertises its products, including saws identical to the one used by Plaintiff, on its website, located at http://www.protechpower.com.  This website also identifies a number of authorized service centers located in Pennsylvania.  (Doc. No. 17 at 2.)

Pro-Tech removed this case from the Court of Common Pleas of Philadelphia County to this Court on December 24, 2003.  (Doc. No. 1.)  On May 19, 2005, P&F filed a Motion to Dismiss Plaintiffs' Complaint for lack of personal jurisdiction.  (Doc. No. 13.)  In their response in opposition, Plaintiffs request permission to take discovery on the issue of jurisdiction.  (Doc. No. 17 at 6.)  P&F then filed a motion to quash Plaintiffs' request for jurisdictional discovery or, if the Court permits such discovery, to limit it to the issue of jurisdiction and suspend P&F's obligation to respond to any merits-based inquiries.  (Doc. No. 21.)  Thereafter, Plaintiffs filed a motion to strike P&F's second motion on grounds that P&F never attempted to resolve the discovery dispute without court intervention.  (Doc. No. 24.)

## II.     LEGAL STANDARD

In a diversity action such as this, the district court has personal jurisdiction over a nonresident defendant to the extent allowed by the law of the state where the court sits, subject to the constitutional limitations of due process. Fed. R. Civ. P. 4(e); *see also Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Under Pennsylvania's long-arm statute, Pennsylvania courts may exercise jurisdiction to "the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat.§ 5322(b). The reach of Pennsylvania's long-arm statute is therefore coextensive with the Due Process Clause of the Fourteenth Amendment. *N. Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990).

A court may exercise personal jurisdiction based on the defendant's general or specific contacts with the forum state. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). When general jurisdiction exists, "the contacts between the defendant and the forum need not be specifically related to the underlying cause of action in order for an exercise of personal jurisdiction over the defendant to be proper." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 n.1 (3d Cir. 2002). However, general jurisdiction arises only when the defendant's activities in the forum state are both "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

Alternatively, specific jurisdiction requires the cause of action to arise from the defendant's forum-related activities. *N. Penn Gas Co.*, 897 F.2d at 690. We apply a two-part test to determine whether specific jurisdiction exists. *IMO Indus. v. Keikert AG*, 155 F.3d 254, 259 (3d Cir. 1998). First, the plaintiff must show that the defendant has "minimum contacts with

the forum" such that it could "'reasonably anticipate being haled into court there.'" *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 201 (3d Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  The required "minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987) (O'Connor, J., plurality opinion) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Second, we inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"  *Burger King Corp.*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).  Although this second prong "need only be applied at a court's discretion," the Third Circuit has "generally chosen to engage in this second [part] of analysis." *Pennzoil Prods. Co.*, 149 F.3d at 201.  Among the factors that a court may consider in this determination are "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' [and] 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies.'"  *Burger King Corp.*, 471 U.S. at 477 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292)).

      Once a defendant has raised a jurisdictional defense, "plaintiff bears the burden of demonstrating contacts with the forum state sufficient to give the court in personam jurisdiction." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984) (internal quotation omitted).  While a court must "accept the plaintiff's allegations as true and construe disputed facts in [its] favor," *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003), a plaintiff may not rest solely on the pleadings to satisfy its burden of proof.  *Carteret Sav.*

*Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Rather, the plaintiff must present sworn affidavits or other evidence that demonstrates a prima facie case for the exercise of personal jurisdiction. *Mellon Bank PSFS v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *Carteret Sav. Bank*, 954 F.2d at 146. Because a Rule 12(b)(2) motion "requires resolution of factual issues outside the pleadings," *Time Share Vacation Club*, 735 F.2d at 67 n.9, we may consider all undisputed evidence submitted by the parties.

### III.   DISCUSSION

In support of its Motion to Dismiss, P&F submits an affidavit from its Sales Manager.[1] In this document, P&F asserts that it: has never conducted or solicited any business in Pennsylvania; has never sold, shipped, advertised, marketed, or promoted the sale of any miter saws or similar products to any entity here; did not create, control, or employ any distribution system that brought miter saws or similar products to Pennsylvania; does not provide and has not provided any advice to miter saw purchasers in this state; has not manufactured, designed or distributed any products here; does not perform services for any person or firm in this state; does not maintain a registered agent for service of process in Pennsylvania; and has never owned, leased, used, or possessed any property in Pennsylvania. (Doc. No. 13 at Ex. 2.) The affidavit also asserts that defending this action "would be very burdensome and difficult for P&F because of language differences, the distance involved and P&F's lack of familiarity with the laws of Pennsylvania." (*Id.* at Ex. 2 ¶ 24.)

---

[1] The affiant's name and signature appear only in Asian characters. We are thus unable to discern the English spelling of this individual's name.

Plaintiffs advance three theories on which to establish personal jurisdiction over P&F: (1) general jurisdiction based on P&F's trade relationship with Pro-Tech, (2) specific jurisdiction based on P&F having placed products into the stream of commerce, and (3) specific or general jurisdiction based on an "alter ego, instrumentality, or agency" relationship between P&F and Pro-Tech.  (Doc. No. 17 at 9-14.)  The first theory requires a showing that P&F had "continuous and substantial" contacts with Pennsylvania.  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted).  Where internet sales are the only basis introduced in support of such contacts, there must also be "evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, or knowingly interacting with residents of the forum state via its web site."  *Toys "R" Us, Inc.*, 318 F.3d at 454.

The "stream of commerce" theory allows specific jurisdiction to be "asserted over a nonresident defendant which injected its goods, albeit indirectly, into the forum state and either derived a substantial benefit from the forum state or had a reasonable expectation of deriving a substantial benefit from it."  *Pennzoil Prods. Co*, 149 F.3d at 203 (internal quotation omitted).  The Supreme Court addressed the "stream of commerce" theory in *Asahi*, presenting "three different conceptions of purposeful availment through the stream of commerce."  *Id*.  Justice O'Connor, joined by three other Justices, concluded that the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State," and thus is not sufficient to subject the defendant to personal jurisdiction in that state.  *Asahi*, 480 U.S. at 112.  Rather, "[a]dditional conduct of the defendant [that] may indicate

an intent or purpose to serve the market in the forum State"[2] is required to subject the defendant to jurisdiction.  *Id.*  Justice Brennan, writing for another plurality of four Justices, argued that the minimum contacts required by due process were satisfied so long as there is a "regular and anticipated flow of [the defendant's] products" into the forum and the defendant "is aware that the final product is being marketed in the forum," finding the additional conduct described by Justice O'Connor unnecessary.  *Id.* at 117.  Justice Stevens, the ninth vote, stated that whether or not a defendant's conduct satisfies the minimum contacts test "is affected by the volume, the value, and the hazardous character of the components [placed in the stream of commerce.]"  *Id.* at 122.  Since the Supreme Court's decision in *Asahi*, the Third Circuit has not taken a position regarding the three tests discussed in *Asahi*, instead addressing each case on its individual merits.  *See, e.g.*, *Pennzoil*, 149 F.3d at 207 n.13; *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 283 (3d Cir. 1994).

Under Plaintiffs' third theory, jurisdiction is extended upon a finding that a nonresident corporation is the "alter ego" of an entity over which the court rightfully has personal jurisdiction.  "A subsidiary will be considered the alter ego of its parent only if the parent exercises control over the activities of the subsidiary."  *Clemens v. Gerber Scientific, Inc.*, Civ. A. No. 87-5949, 1989 U.S. Dist. LEXIS 376 at *4 (E.D. Pa. Jan. 13, 1989).  To prevail under an alter ego theory, Plaintiffs must demonstrate that "[t]he degree of control exercised by the parent is greater than normally associated with common ownership and directorship."  *In re Latex*

---

[2] Examples of such additional conduct include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."  *Asahi*, 480 U.S. at 112.

*Gloves Prods. Liab. Litig.,* No. MDL 1148, 2001 U.S. Dist. LEXIS 12757, at *12 (E.D. Pa. Aug. 22, 2001) (quoting *Arch v. Am. Tobacco Co., Inc.*, 984 F. Supp. 830, 837 (E.D. Pa. 1997)). "Plaintiffs must prove that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent." *Id.* at *12 (quoting *Arch*, 984 F. Supp. at 837). "Overlapping directors and officers do not alone establish an alter ego relationship." *Arch*, 984 F. Supp. at 838 (citing *Poe v. Babcock Int'l, PLC*, 662 F. Supp. 4, 5 (M.D. Pa. 1985)).

When it applies, one may use "the alter ego doctrine to secure jurisdiction over nonresident corporations upon a finding that either the 'dominant' or 'subservient' corporation does business within the state." *Aamco Automatic Transmissions, Inc. v. Tayloe*, 368 F. Supp. 1283, 1300 (E.D. Pa. 1973). The factors to consider when determining if a subsidiary is an alter-ego or agent of the parent are: (1) ownership of all or most of the stock of the subsidiary; )2) common officers and directors; (3) a common marketing image; (4) common use of a trademark or logo; (5) common use of employees; (6) an integrated sales system; (7) interchange of managerial and supervisory personnel; (8) subsidiary performing business functions which the principal corporation would normally conduct through its own agents or departments; (9) subsidiary acting as marketing arm of the principal corporation, or as an exclusive distributor; and 10) receipt by officers of the related corporation of instruction from the principal corporation. The inquiry should also "encompass whether there is a single functional and organic identity." *In re Latex Gloves*, 2001 U.S. Dist. LEXIS 12757, at *13. The court "should examine all relevant factors that relate to the intimacy of the relationship between the parent and subsidiary to assess whether the contacts of the subsidiary [with the forum] should be imputed to

the parent." *Arch*, 984 F. Supp. at 837 (stating that the test "perforce incorporates all the factors that have been historically used in determining whether a subsidiary is an alter ego or agent of the parent").

      Here, Plaintiffs present minimal but suggestive evidence to support their jurisdictional theories. Attached to Plaintiffs' Response is a printed excerpt from Pro-Tech's website, which implies that all of Pro-Tech's products are manufactured by P&F,[3] and a copy of Pro-Tech's registration statement with the California Secretary of State, which identifies Paul C.T. Chang as Pro-Tech's president. (Doc. No. 18 at Exs. A, B.) Paul Chang also serves as Chairman of the Board of P&F and, along with his brother Freddie Chang, is alleged to own or control both P&F and Pro-Tech. *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 841 (E.D. Va. 1998). Plaintiffs also place considerable reliance on facts averred in *Black & Decker (U.S.) Inc.*, a trademark and patent infringement action brought against Pro-Tech and P&F in the Eastern District of Virginia. In that case, the plaintiff argued that the Virginia court should extend personal jurisdiction to P&F based on "stream of commerce" and "alter ego" theories. *Id.* at 843. Notwithstanding these arguments, the district court rejected the latter theory, finding that although Paul Chang was an officer or director of both companies, "the weight of evidence at trial demonstrated that Pro-Tech [and] P&F . . . [we]re independent companies both in form and

---

[3] "Question: Where are Pro-Tech tools manufactured? Answer: Pro-Tech tools are manufactured in Taiwan. P&F Brother is one of the world's largest tool manufacturers and at one time or another has made tools or components for nearly every major brand name on the market." (Doc. No. 18 at Ex. A.) P&F has not disputed the implication that Pro-Tech distributes only P&F products.

in fact—with separate management, bank accounts, corporate offices and the like."[4]  *Id.*  The "stream of commerce" argument also failed, because plaintiff could produce no evidence of purposeful availment beyond P&F's mere awareness that the stream of commerce may have swept its product into Virginia.  *Id.* (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994)).

At this point, it is clear that the record adduced by the Oeschles does not establish either the type of "purposeful availment" necessary to extend jurisdiction via a "stream of commerce" analysis, "continuous and systematic" contacts by P&F through which to extend general jurisdiction, or an evidentiary basis to link P&F and Pro-Tech as alter egos.  Where, as here, "the court is not satisfied by a plaintiff's jurisdictional allegations," we may permit plaintiffs to take jurisdictional discovery "if the plaintiff has made a colorable or prima facie showing of personal jurisdiction."  *In re Daimlerchrysler Sec. Litig*, 197 F. Supp. 2d 86, 94 (D. Del. 2002).  While the Third Circuit has stated that leave to conduct jurisdictional discovery should be freely granted, *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 454 (E.D. Pa. 1999) (citing *Renner*, 33 F.3d at 283-84), "allowing such discovery is premised on the assumption that further discovery would be worthwhile."  *Id.* (citing *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 475 (D. Del. 1995)).  In order to proceed, plaintiff must show "some

---

[4] Plaintiffs attempt to distinguish this case based on Virginia's more restrictive long-arm statute.  (*See* Doc. No. 17 at 5 n.2; Va. Code Ann. § 8.01-328.1(A)(4).)  However, the *Black & Decker* court determined that P&F's activities with respect to Virginia satisfied that portion of the statute, but that an exercise of personal jurisdiction as to P&F nonetheless violated the Due Process Clause of the Constitution.  26 F. Supp. 2d at 842-43.  Under the circumstances, the difference in long-arm statutes does not militate in favor of Plaintiffs.

competent evidence to demonstrate that personal jurisdiction over the defendant might exist." *Hansen*, 163 F.R.D. at 475.

We are satisfied that the allegations raised and the evidence presented by Plaintiffs constitute more than "mere speculation" that P&F has requisite contacts with the forum state. *Poe*, 662 F. Supp. at 7. The dual role occupied by Paul Chang, combined with the finding that Pro-Tech distributes only P&F products, provides sufficient basis to permit jurisdictional discovery. Accordingly, we will give Plaintiffs sixty (60) days to conduct jurisdictional discovery, after which P&F may file a renewed motion under Rule 12(b)(2).

In that Plaintiffs are permitted to conduct limited discovery, P&F's Motion to Quash discovery will be denied. However, we will grant P&F's request for a protective order suspending merits-based discovery until the sixty-day period has expired and this Court has ruled on any renewed motion to dismiss filed by Defendant. Accordingly, P&F need not respond to Plaintiffs' First Set of Interrogatories Directed to Defendant P&F or Plaintiffs' First Request for Production of Documents Directed to Defendant P&F. (Doc. No. 21 at Ex. 2.) P&F must respond only to the fourteen interrogatories and requests in Plaintiffs' Second Set (Doc. No. 21 at Ex. 2).[5] However, P&F need not respond to Request 2, which seeks merit-based discovery. In addition, P&F need not respond to Requests 1 and 3. We question how discovery from *Black & Decker (U.S.) Inc*, an eight-year-old case, where a similar challenge to Defendant's 12(b)(2) motion failed, will assist Plaintiffs in the instant case. In any event, Plaintiffs may obtain this information by accessing the trial record from the Eastern District of Virginia or through specific

---

[5] Plaintiffs' Counsel has designated these as the "jurisdictional interrogatories." (*See* Doc. No. 26 at Ex. C.)

document requests or interrogatories.  All discovery requested by Plaintiffs must be strictly limited to the issue of jurisdiction.

  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD A. OESCHLE and | : | |
| MARYANN T. OESCHLE, h/w | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 03-CV-6875 |
| PRO-TECH POWER, INC. and | : | |
| P&F BROTHER INDUSTRIAL | : | |
| CORP. | : | |

**<u>ORDER</u>**

AND NOW, this 15th day of March, 2006, upon consideration of Defendant P&F Brother Industrial Corp.'s Motion To Dismiss Pursuant To Federal Rule of Civil Procedure 12(b)(2) (Doc. No. 13), Motion To Quash And For Entry Of A Protective Order (Doc. No 21), and Motion For Permission To File A Reply Brief In Support Of Motion To Dismiss (Doc. No. 22), and Plaintiffs Richard A. and MaryAnn T. Oeschle's Motion To Strike Defendant's Motion To Quash And For Entry Of A Protective Order (Doc. No. 24), it is ordered as follows:

1. Defendant's Motion for Permission to File a Reply Brief is DENIED.

2. Defendant's Motion to Quash and for Entry of a Protective Order is GRANTED IN PART and DENIED IN PART, consistent with the attached Memorandum.

3. Defendant's Motion to Dismiss is DENIED WITHOUT PREJUDICE.

4. Plaintiffs' Motion to Strike is DENIED.

5. Plaintiffs are GRANTED sixty (60) days to conduct jurisdictional discovery with respect to Defendant P&F Brother Industrial Corp., after which Defendant P&F Brother Industrial Corp. may file a renewed motion to dismiss for lack of personal jurisdiction.

6. Jurisdictional discovery will be conducted pursuant to the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

BY THE COURT:

S/ R. Barclay Surrick

_____
R. Barclay Surrick, Judge